Filed 2/16/22  In re Julian C. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| In re JULIAN C., a Person Coming Under the Juvenile Court Law. | B312544 |
| | (Los Angeles County Super. Ct. No. CK92053C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RUNA K.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

The juvenile court declared Julian C. a dependent child of the court and ordered family reunification services for his mother, Runa K. The court subsequently terminated reunification services, appointed Julian's grandmother as his legal guardian, and terminated dependency jurisdiction. Six years later, Runa filed a petition under Welfare and Institutions Code section 388[1] to terminate the guardianship. The court denied the petition, and Runa appealed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Juvenile Court Appoints Julian's Grandmother as His Legal Guardian*

Runa has three children: 17-year-old Jonathan, 15-year-old Isayuh, and 11-year-old Julian. Jonathan and Isayuh have the same father; Julian has a different father.

In December 2011 the Los Angeles County Department of Children and Family Services received a referral stating that Runa had been arrested for being under the influence of a controlled substance and for child endangerment. The reporting party said Runa appeared to be under the influence of

———————————————

[1]   Statutory references are to this code.

2

methamphetamine. Runa claimed that she ingested benzodiazepine (which she did not have a prescription for), but also admitted that she used methamphetamine while pregnant with Julian.

In February 2012 the juvenile court sustained a petition under section 300. The court found true the Department's allegations under section 300, subdivision (b), that Runa had been arrested for being under the influence of a controlled substance and for willful cruelty to a child and that Runa had an outstanding bench warrant relating to prior charges, "thereby leaving [her] children without adequate care and supervision."[2]

The court declared Julian a dependent child of the court, placed him with Runa's mother (Julian's grandmother), and ordered the Department to provide Runa with family reunification services. The court ordered Runa to receive parenting training and substance-abuse counseling, submit to random drug testing, and participate in individual counseling. One year later the court terminated family reunification services for Runa and ordered the Department to provide Julian with permanent placement services. In May 2014 the court appointed Julian's grandmother as his legal guardian and terminated its dependency jurisdiction.[3]

---

[2] The court also found true certain allegations regarding Julian's father (who was in custody at the time) under section 300, subdivisions (b) and (g), and ordered that he would not receive family reunification services. Julian's father is not a party to this appeal.

[3] "Following establishment of a legal guardianship, the court . . . may terminate its dependency jurisdiction and retain

3

B.    *Runa Files a Petition Under Section 388 To Terminate the Guardianship*

On December 11, 2020 Runa filed a petition under section 388 to terminate the guardianship, using Judicial Council Forms, form JV-180. Runa alleged the following changed circumstances: She had completed a 12-week drug and alcohol treatment program;[4] she had obtained a "stable job" with a company that provided grocery delivery services; she had a car and home; and Julian had been living with her since April 2020. Runa alleged it was in Julian's best interest for the court to terminate the guardianship because Julian was "doing well with [Runa] in [a] homeschool program," Julian had not been enrolled in school when he lived with his grandmother, and Julian's father would be released from prison in a few weeks.

On December 31, 2020 Runa filed another JV-180 form with a handwritten note on the top of the first page: "Amendment . . . to ADD information." Runa alleged that Julian's grandmother came "with the police" and took Julian and that, since the grandmother had taken Julian, he was no longer enrolled in school.

C.    *The Department Opposes the Petition*

The Department submitted a report recommending the court deny the petition to terminate the guardianship. The report included the following information:

---

jurisdiction over the child as a ward of the legal guardianship . . . ." (§ 366.3.)

[4]    Runa attached to the petition a certificate of completion of the program.

4

*Living Arrangements*:  Runa was living with Jonathan and Isayuh in a hotel.  Runa told a dependency investigator for the Department that she had a permanent home and that she had been living at the hotel for three to four months while the house was under construction.  The investigator later went to the address Runa provided, but the house there did not appear to be under construction.  The investigator asked a woman sitting outside the house whether she knew Runa, and the woman said she did not.  When the investigator subsequently described the incident to Runa, Runa became "extremely upset and began to yell" and questioned why the investigator went to the house.

Runa told the investigator to speak to an employee of the hotel to confirm Julian had been living with her.  The investigator spoke to the employee, but the employee could not confirm Julian was living there.

The investigator also interviewed Julian's grandmother, who stated that she never allowed Julian to live with Runa, but that in October 2020 Runa came to her home, took Julian from the front yard, and drove away.  The grandmother said that after she called Runa and asked her to return Julian, law enforcement had to retrieve Julian from Runa's hotel room.  The grandmother stated that she was "'afraid to allow Julian to have visits'" with Runa and that she overheard Runa "'telling Julian through a video game to say he had been living with his mom for four months . . . if he wanted to live with her.'"

The investigator interviewed Julian the same day she interviewed the grandmother.  Julian stated:  "'I live with my grandmother.  I don't know.  She let me live there for four months because my mom told me.  I want to live with my mom and brothers.'"  A man named Issa H., who lived at the home of

Julian's grandmother, also told the investigator that Julian lived in the home and never lived with Runa

*Prior Referrals to the Department About Runa*: In December 2016 Julian's grandmother brought him to a park to visit Runa, and Runa took him from the park. One week later the grandmother spoke with a cousin who lived in Las Vegas, and the cousin said that she had seen Runa and that Runa said she had been staying in shelters in Las Vegas. Julian's grandmother filed a missing person report and, two weeks later, Runa, Julian, Jonathan, and Isayuh were found in Chicago. Julian (at the time five years old) said that Runa had given him cigarettes and beer and that she had hit him and his brothers. Julian also stated Runa would come to their house and start fights with his grandmother.

In February 2018 the Department received a referral stating that Runa had regained custody of Jonathan and Isayuh under false pretenses. The reporting party stated Runa provided "falsified documentation in family court which stated she was compliant with being drug free and compliant with drug testing." A social worker met with Runa, who denied using drugs. Runa refused to submit to a drug test, allow the social worker to verify her residence, or sign any Department forms.

In January 2020 the Department received another referral alleging Runa neglected her children. The reporter said Runa was homeless and lived "'in a black suburban truck that she parks in front of'" her mother's house. The reporter stated: "'The children don't go to school and haven't gone to school in at least three years. They don't shower. . . . [Runa] is collecting money for the kids but she uses it for drugs and doesn't get food or provide for the kids.'" The reporter added that another adult in

6

the grandmother's home "'saw track marks on [Runa's thighs] and arms a couple days ago.'"

*Runa's Compliance with the Court-ordered Programs*: Runa completed a parenting course in 2016. When the investigator asked Runa whether she had completed any other court-ordered programs, Runa mentioned the drug and alcohol program certificate she attached to her section 388 petition. Runa did not say she received individual counseling.

Runa also showed the investigator a negative drug test. The test had a December 2011 date but, according to the investigator, "it appeared the date was bolded in with a pen." The following week the investigator asked Runa to provide any certificates she had, and Runa responded with a text message that stated: "'[T]he paper u took a picture of when u were here for the negative test that paper should be the solution to this whole thing it was negative . . . . I shouldn't have even been in any program because if the court really takes the time to investigate that negative text [*sic*] all this should have been closed and Julian should be home without any problems or issues from any worker . . . . And the issue isn't bout me it's bout [h]ow the officer took Julian illegally here.'"

D. *The Department Files a Pre-detention Report About Jonathan and Isayuh*

On February 10, 2021 the juvenile court asked the Department to file a pre-detention report explaining why

Jonathan and Isayuh were in Runa's care.[5]  The report stated the following:

A social worker for the Department spoke to Runa, who stated that the San Bernardino County Superior Court granted her custody of Jonathan and Isayuh, but that she never received a copy of the order.  The social worker also spoke to Jonathan and Isayuh's father, who said that he had not seen the children in three years, but that he believed he had joint custody of them.  He also stated Runa was supposed to return Jonathan and Isayuh to his care in August 2017, but never did.  He said Runa would leave the state and go to shelters so that he could not find them.

After speaking to Jonathan and Isayuh's father, the social worker spoke again to Runa.  Runa insisted "'Judge Zeidler and [the Department]'" knew Jonathan and Isayuh had lived with her for the past few years.  Runa said she planned to move out of California because she was "'tired of dealing with'" the Department.

Runa also told the social worker the children were enrolled in a homeschool program and met with a teacher every month.  But when the social worker asked for the phone number or email address of the teacher, Runa did not provide it.  The social worker asked Runa to sign release forms to enable the Department to verify school enrollment and medical information for Jonathan and Isayuh, but Runa refused.

---

[5]     The juvenile court previously transferred the proceeding concerning Jonathan and Isayuh to the San Bernardino County Superior Court after the two children "reunified with their father."

The social worker spoke with Isayuh, but Runa only allowed the social worker to speak with him when Runa was present. When the social worker asked Isayuh about their prior living conditions, Runa stated, "'Don't ask him about that.'" When the social worker asked him the name of his school and his teacher, Isayuh responded, "'I don't know,'" and said his school was online.

The social worker also interviewed Julian. Julian did not know what school he attended, what school he had attended previously, or the name of his teacher. He said he had been attending the school for a month.

On February 18, 2021 Runa took a drug test. She tested negative for all substances.

### E. *The Court Denies the Section 388 Petition*

On March 1, 2021 the juvenile court held a hearing under section 388 and denied the petition to terminate the guardianship. The court ruled that Runa did not "show sufficient change in circumstances or sufficient new information" and that terminating the guardianship would not be in Julian's best interests. Runa timely appealed.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

Section 388, subdivision (a)(1), provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child . . .

9

for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." To prevail on a section 388 petition, the petitioner must show ""'by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.'"" (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

Because Runa had the burden to demonstrate new evidence or a change of circumstance, we review the juvenile court's finding that Runa failed to meet her burden by determining whether the evidence compels a finding in her favor on that issue as a matter of law. (See *In re N.O.* (2019) 31 Cal.App.5th 899, 925-926; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1161, 1163.) Specifically, we determine whether "the evidence 'was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*In re Luis H.* (2017) 14 Cal.App.5th 1223, 1227; see *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)

We review for abuse of discretion the juvenile court's ruling the proposed modification—here, terminating the guardianship—was not in the best interest of the child. (See *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318; *In re Malick T.*, *supra*, 73 Cal.App.5th at p. 1123; *In re N.F.* (2021) 68 Cal.App.5th 112, 120.) ""'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no

authority to substitute its decision for that of the trial court."'"''
(*In re Stephanie M.*, at pp. 318-319; see *In re I.B.* (2020)
53 Cal.App.5th 133, 153.)

B. *The Juvenile Court Did Not Err in Ruling There Were No Changed Circumstances*

"'Not every change in circumstance can justify modification of a prior order'" under section 388. (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 120; see *In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "'"[T]he change in circumstances must be substantial."'" (*In re Malick T.*, *supra*, 73 Cal.App.5th at p. 1122; see *In re I.B.*, *supra*, 53 Cal.App.5th at p. 152; *In re J.M., supra*, 50 Cal.App.5th at p. 845.) And where, as here, the juvenile court has terminated a parent's reunification services, a substantial change means "the problem that initially brought the child within the dependency system [has been] removed or ameliorated." (*In re A.A.,* at p. 612; see *In re J.M.*, at p. 846 [a "parent establishes a substantial change of circumstances for purposes of section 388 by showing that . . . he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction"].)

Runa argues her completion of parenting classes, completion of the alcohol-and-drug treatment program, clean drug test, employment and housing situation, and ability to care for her children "collectively demonstrate the relevant and material change that section 388 requires." But Runa did not submit uncontradicted and unimpeached evidence requiring the juvenile court to find a substantial change in circumstances that removed or ameliorated the problems that brought Julian within the jurisdiction of the court. There were (at least) two problems

11

that brought Julian under the court's jurisdiction: Runa's substance abuse and her cruelty toward her children.[6]

Runa showed some progress toward ameliorating the first problem. She completed a 12-week drug-and-alcohol treatment program in 2018 and a four-hour, introductory drug-and-alcohol course after she filed her petition. And she tested negative for controlled substances once, immediately before the hearing on her petition. But "in the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 121.) Runa's efforts were a good start, but they fell far short of unimpeached and uncontradicted evidence of a substantial change in circumstances. (See *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["Appellant's completion of a drug treatment program, at this late a date, though commendable, is not a substantial change of circumstances."]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [court did not err in denying a section 388 petition where the parents' "recent efforts at rehabilitation were only three months old"]; *In re Angel B.* (2002) 97 Cal.App.4th 454, 463 [court did not err in denying a section 388 petition where, although the mother "had completed [a] drug program, the time she had been sober

_____

[6] As stated, the juvenile court sustained the allegation Runa was arrested for being under the influence of a controlled substance and for willful cruelty of a child. The juvenile court also found true the allegation Runa had an outstanding bench warrant, but the Department did not discover any criminal charges filed against Runa since 2011.

12

was very brief compared to her many years of drug addiction"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 ["seven months of sobriety" were insufficient for a father to meet his burden under section 388, where he had a long history of drug abuse].)

Moreover, there was evidence Runa had recently used drugs. (See *In re N.F.*, *supra*, 68 Cal.App.5th at p. 122 [mother failed to show a substantial change in circumstances where there was "conflicting evidence about her sobriety" and a "brief period of sobriety and completion of a treatment program was only the most recent attempt in a series of unsuccessful attempts to overcome her substance abuse"].) In January 2020—less than a year before Runa filed her petition under section 388—the Department received a referral stating that Runa used drugs and had track marks on her legs and thighs. In 2018 the Department, while investigating whether Runa had submitted documents to the court falsely stating she had complied with drug testing requirements, asked Runa to take a drug test, and she refused.

Even Runa's completion of the 2018 treatment program provided little (if any) evidence Runa was not abusing substances during that period. A representative of the program told the Department the course Runa completed was "entirely online, with reading, video and homework assignments, but no one on one."

In addition, Runa did not show she had insight into, or had taken any responsibility for, why Julian was no longer in her care. (Cf. *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1289 [order terminating reunification services for the mother was not an abuse of discretion where the mother "continued to obstinately and belligerently maintain that she did not require any services

13

to reunify with the minor; and remained completely oblivious to the significantly detrimental impact that her actions were having on her son"].) Rather than attempt to show she had stopped using drugs for any considerable length of time, Runa gave the Department investigator a drug test purportedly from 2011, which the investigator did not believe was authentic. Runa stated the nearly 10-year-old negative test "should be the solution to this whole thing," believed the Department's case "should have been closed," and blamed law enforcement (rather than herself) for the fact that Julian was not in her care. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 49 [no change of circumstances where the mother had a "pattern of maintaining drug treatment only when motivated by the desire to reunify the family and required by outside agencies"], disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

Nor did Runa provide compelling and uncontradicted evidence she had ameliorated or resolved the second reason the court sustained the Department's section 300 petition—Runa's cruelty to her children. On the one hand, Runa completed a parenting course in November 2016, and Julian and Isayuh denied Runa abused them. And the investigator who interviewed Julian did not see any marks or bruises on him. On the other hand, Julian said in December 2016—only one month after Runa completed the parenting course—that Runa gave him beer and cigarettes and that she had hit him and his brothers during the incident where she took him to Chicago. And Runa failed to present any evidence that she had received individual counseling, which could have reduced the likelihood of abuse.

14

C. *The Juvenile Court Did Not Abuse Its Discretion in Ruling That Terminating the Guardianship Was Not in Julian's Best Interests*

Runa does not address the juvenile court's ruling it was not in Julian's best interests to terminate the guardianship. For this reason alone, she has failed to show the court erred in denying her petition. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79 ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.'"]; *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1218 [under section 388 "the parent bears the burden of proving the change serves the child's best interest"].)

But even if Runa had addressed the issue, the juvenile court did not abuse its discretion. "[B]est interests is a complex idea" that requires the court to consider a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530; see *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124 ["'"The concept of a child's best interest 'is an elusive guideline that belies rigid definition.'"'"].) "When, as in this case, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interests. [Citation.] The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability." (*In re Malick T.*, *supra*, 73 Cal.App.5th at pp. 1122-1123; see *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317; *In re J.M.*, *supra*, 50 Cal.App.5th at p. 847.)

In her petition Runa asserted three reasons why terminating the guardianship was in Julian's best interests: Julian was doing well in a homeschool program while in Runa's

15

care; Julian was not enrolled in school when he lived with his grandmother; and Julian's father would be released from prison soon. None of these reasons holds up. The evidence Julian was in a homeschool program while he was in Runa's care, or even that he was in Runa's care for any appreciable period of time, was highly suspect. According to Julian, Julian's grandmother, and Issa, who resided in the grandmother's house, Julian lived with his grandmother, not Runa. The grandmother told a Department investigator which school Julian attended, and an administrator from the school confirmed Julian was enrolled there. The registrar and an education specialist from another school informed the investigator that Julian was briefly enrolled at their school from October 23, 2020 to November 4, 2020 (around the same time, according to the grandmother, Runa took Julian), but that Julian did not attend classes.[7]

Runa also failed to provide evidence confirming Jonathan and Isayuh were in a homeschool program, further undermining any claim by Runa that Julian would do well in a homeschool program in her care. Runa refused to sign forms to enable the Department to verify whether Jonathan and Isayuh were enrolled. She did not give the social worker the phone number or email address of the teacher she claimed Jonathan and Isayuh met with monthly. And, when asked by a Department social worker, (15-year-old) Isayuh could not name his school or one of his teachers.

Runa's other contention—that Julian's father would soon be released from prison—was similarly not a reason to terminate

---

[7] The school disenrolled Julian when it learned the grandmother was his legal guardian.

the guardianship.  Runa did not submit any evidence Julian's father was able or available to care for him.  And the Department filed a declaration of due diligence stating it could not "ascertain the whereabouts" of Julian's father.

Moreover, putting aside the conflicting evidence of Runa's recent drug use and prior abuse of her children, the Department provided evidence that terminating the guardianship would not further Julian's interest in a permanent and stable living arrangement.  Julian had been in his grandmother's care for the past nine years, except for, at most, the few weeks Runa took him.  In contrast, Runa's living situation was turbulent.  Although she told the Department she had been living at a hotel for only a few months, she did not appear to live in the permanent home she claimed she lived in, and the Department received a referral earlier in 2020 stating that Runa slept in her car.  And Runa interrupted when the case social worker attempted to ask Isayuh about his prior living situation with Runa.

Finally, Runa's future intentions were uncertain.  She had previously taken Julian and her other children out of the state, and she told the Department social worker she wanted to move again because she was "tired of dealing with [the Department]."  True, Julian said he wanted to live with Runa and his brothers.  But the court did not abuse its discretion in ruling that terminating the guardianship would not promote the permanency and stability Julian needed.  (See *In re C.J.W., supra,* 157 Cal.App.4th at p. 1081 [even assuming the parents had successfully completed drug rehabilitation, "there was no showing whatsoever of how the best interests of [their] young

17

children would be served by depriving them of a permanent, stable home in exchange for an uncertain future"].)

## DISPOSITION

The order denying Runa's petition under section 388 is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.